ALBERT DEVITO *v.* EDWARD SCHWARTZ ET AL.
(AC 20997)

Lavery, C. J., and Spear and Dranginis, Js.

Submitted on briefs April 6—officially released October 16, 2001

*Louis Ciccarello* filed a brief for the appellant (defendant).

*Opinion*

LAVERY, C. J. In this defamation action, the counter-claim plaintiff, Edward Schwartz, appeals from the judgment rendered by the trial court after the court denied his motion to set aside the verdict. On appeal, Schwartz claims that the court improperly denied his motion because the defamatory statements made by the coun-

terclaim defendant, Albert DeVito, were slanderous per se, and, therefore, he was entitled to at least some damages. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In November, 1996, DeVito initiated an action against Schwartz, Francis Dattalo and the 709 Sports Club[1] for assault and battery. The complaint alleged that an altercation took place between DeVito, Schwartz and Dattalo in August, 1996, at the 709 Sports Club at 34 Martin Luther King Boulevard in Norwalk.[2] In February, 1997, Schwartz filed an answer, special defenses and a counterclaim. The third count of the counterclaim, which is the only count relevant to this appeal, alleged that DeVito, in front of others, called Schwartz a "crook" and accused him of stealing money from the 709 Sports Club. Schwartz further claimed that those statements were false and were made wilfully, wantonly and maliciously, and that, as a result of the slander, he suffered embarrassment, humiliation and injury to his reputation. Schwartz sought compensatory and punitive damages for his injuries. The court rendered a judgment of nonsuit in the assault and battery action in favor of Schwartz on July 12, 1998. A jury trial on the counterclaim began in June, 2000, during which the court granted Schwartz's motion to amend the counterclaim to add the word "thief."

Following the parties' closing arguments, the court charged the jury on slander per se and damages as follows: "Slander per se. An example of a slander per se is charging the commission of a crime involving

---

[1] Dattalo and the 709 Sports Club are not involved in the present appeal.

[2] The complaint alleged that DeVito has an ownership interest in the property at 34 Martin Luther King Boulevard and is a founding member of an unincorporated association called the 709 Sports Club. The complaint further alleged that Schwartz and Dattalo are founding members of an unincorporated association also called the 709 Sports Club. That club is on the property coowned by DeVito at 34 Martin Luther King Boulevard.

moral turpitude. Moral turpitude in turn involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between a person and the law. An oral statement that one has stolen something has been held by our courts to be actionable per se. In other words, accusing someone of theft is slanderous per se. When words are slanderous per se, as I said, a claimant is not required to show special, actual or pecuniary damages. The law conclusively presumes the existence of injury to the claimant's reputation. He is not required to plead or to prove it."

In addition to the jury instructions, the court presented the jury with interrogatories. Regarding the third count of the counterclaim, question five of the interrogatories asked the jury: "Did the claimant prove, by a fair preponderance of the evidence, that the counterclaim defendant, Mr. DeVito, 'slandered' him?" The jury responded, "yes." Question six of the interrogatories asked: "Did the claimant prove, by a fair preponderance of the evidence, that the slanderous statements were published by Mr. DeVito, that is, did the slander come to the ears of one or more persons who understood the defamatory material?" The jury responded, "yes." Question seven of the interrogatories asked: "Did the counterclaim plaintiff, Edward Schwartz, prove, by a fair preponderance of the evidence, that the counterclaim defendant, Mr. DeVito, acted wilfully, wantonly or maliciously in disregard of the rights of Mr. Schwartz?" The jury responded, "yes." Question eight of the interrogatories asked: "Did the claimant prove, by a fair preponderance of the evidence, that this wilful, wanton and malicious misconduct on the part of the counterclaim defendant was a proximate cause of, that is, a substantial factor in causing, the injuries or damage

alleged by Mr. Schwartz in his counterclaim?" The jury responded, "no."

Question nine of the interrogatories instructed the jury as follows: "If you answered 'YES' in response to any one or more of Questions 2, 4, or 6, please indicate below the sum of money that the counterclaim plaintiff, Mr. Schwartz, has proved to be his fair, just and reasonable compensatory damages caused by and resulting from Mr. DeVito's conduct and actions, AND then go on also to answer QUESTION 10. If, HOWEVER, you answered NO to all of such questions, 2, 4 and 6, go no further and render a verdict in favor of the counterclaim defendant, Mr. DeVito." The jury responded: "$0." Finally, question ten of the interrogatories asked, "If you answered Question 8 regarding wilful, wanton or malicious misconduct, 'YES,' are you awarding Mr. Schwartz a sum of money by way of PUNITIVE DAMAGES, that is, the legal cost to him, the counterclaim plaintiff, of this litigation, which is based on Attorney [Louis] Ciccarello['s] legal fee of $19,202?" The jury responded, "No."

The jury returned two verdict forms on the counterclaim, one in favor of DeVito and one in favor of Schwartz. The completed verdict form in favor of DeVito indicates that the jury found all issues for DeVito as against Schwartz.[3] The completed jury form in favor of Schwartz indicates that the jury found the issues in favor of Schwartz as against DeVito, and further determined that Schwartz should recover from DeVito zero compensatory damages and no punitive damages.[4]

---

[3] The "counterclaim defendant's verdict" form states: "In accordance with our answers to the interrogatories, the jury unanimously finds the issues for the counterclaim defendant, Albert DeVito, as against the counterclaim plaintiff, Edward Schwartz."

[4] The "counterclaim plaintiff's verdict" form states: "In accordance with our answers to the interrogatories, the jury unanimously finds the issues for the claimant, the counterclaim plaintiff, Edward Schwartz, as against the counterclaim defendant, Albert DeVito, and further finds that the claimant sustained damages in the amount of: $0 and further finds, in accordance

Therefore, despite answering affirmatively to the question that asked whether Schwartz proved by a fair preponderance of the evidence that DeVito slandered him, and that DeVito acted wilfully, wantonly and in disregard of Schwartz's rights, the jury awarded zero damages. Additionally, despite responding in the affirmative to the question as to whether Schwartz proved that the slanderous statements were published by DeVito, the jury did not award any damages. After the court denied Schwartz's motion to set aside the verdict, Schwartz filed the present appeal.

Before reaching the merits of Schwartz's argument, we briefly address the standard by which we review his claim. It is well established that "[o]ur review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz*, 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 519, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

The court in this case denied the motion to set aside the verdict despite Schwartz's assertion that under Connecticut law, he was entitled to recover general damages without proof of special damages. On appeal,

---

with our answer to Interrogatory 10, that said claimant is entitled to an award of punitive damages in this amount: $0."

Schwartz claims that the court improperly denied his motion to set aside the verdict because he was entitled to recover compensation for injury to reputation and mental suffering without proof of special damages.

In Connecticut, the trier of fact in a personal injury action must break down an award of damages into two categories: Economic damages and noneconomic damages. "Economic damages are defined as compensation determined by the trier of fact for pecuniary losses . . . . Noneconomic damages are defined as compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering. . . . [E]conomic damages are akin to special damages, and noneconomic damages are akin to general damages." (Citations omitted; internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 467 n.1, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001).

Defamation is comprised of the torts of libel and slander. Defamation is "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him." W. Prosser & W. Keeton, Torts (5th Ed. 1984), p. 773. Slander is oral defamation. This court has delineated specific categories of speech deemed actionable per se where "the defamatory meaning of [the speech] is apparent on the face of the statement . . . ." *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 491–92, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). It is a well established principle that an accusation of theft is slander per se. See *Ventresca* v. *Kissner*, 105 Conn. 533, 537, 136 A. 90 (1927).

"When the defamatory words are actionable per se, the law conclusively presumes the existence of injury

to the plaintiff's reputation. He is required neither to plead nor to prove it. . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the [defamation] caused him." (Internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 768, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001). To recover special damages, however, the plaintiff must prove that he suffered economic loss that was legally caused by the defendant's defamatory statements, even where the defamation is per se. See 3 Restatement (Second), Torts § 622 (1977). General and special damages together comprise compensatory damages. See 4 Restatement (Second), Torts § 904 (1979).

"Both nominal and punitive damages also may be awarded where the defamatory material is [defamation] per se. Where the court has found that the plaintiff has suffered a technical legal injury, the plaintiff is entitled to *at least nominal damages*." (Emphasis added.) *Lyons* v. *Nichols*, supra, 63 Conn App. 768. "The award of nominal damages is appropriate when there is a clear invasion of a legal right . . . but no finding of a compensable injury." Id., 769. "Nominal damages are awarded when the insignificant character of the defamatory matter, or the plaintiff's bad character, leads the jury to believe that no substantial harm has been done to his reputation, and there is no proof that serious harm has resulted from the defendant's attack upon the plaintiff's character and reputation." 3 Restatement (Second), Torts § 620, comment (a) (1977); see, e.g., *Walkon Carpet Corp.* v. *Klapprodt*, 89 S.D. 172, 178, 231 N.W.2d 370 (1975) (upholding award of $1 after finding that defendant told others plaintiff was crook, had stolen carpet, belonged in penitentiary, drank to excess, was sexually promiscuous, but also finding that poor reputation of plaintiff not materially damaged by those statements). "[Nominal damages] are also

awarded when they are the only damages claimed, and the action is brought for the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter." 3 Restatement (Second), supra, § 620, comment (a).

Punitive damages, which in Connecticut are limited to attorney's fees less taxable costs; see *Berry* v. *Loiseau*, 223 Conn. 786, 825–27, 614 A.2d 414 (1992); "may be awarded whether the defamation is actionable per se or per quod." 50 Am. Jur. 2d, Libel and Slander § 379 (1995). Such damages, however, "are not awarded as a matter of right, but rather as a matter of discretion, to be determined by the jury upon a consideration of all the evidence . . . ." Id., § 383.

In sum, pursuant to the principles previously outlined, if the defamatory material is defamation per se, the jury may award the plaintiff general damages without any further proof thereof, special damages if proven and punitive damages as a matter of discretion. Where defamation per se has been established, a plaintiff should receive at least nominal damages though not necessarily anything more. See *Kraisinger* v. *Liggett*, 3 Kan. App. 2d 235, 237, 592 P.2d 477 ("[w]hen libel or slander per se is involved, a right to damages exists as a matter of law, even though the damages may be only nominal"), review denied, 226 Kan. 792 (1979). Generally, "[t]he determination of the amount of damages to be awarded in a defamation case is peculiarly within the province of the jury, to be made in accordance with the weight of the evidence . . . and must be left undisturbed unless there is a clear showing of error, prejudice, perversity, or corruption." 50 Am. Jur. 2d, supra, § 399. Awards of general damages in defamation actions are rarely disturbed for inadequacy. Id., § 400.

DeVito's charge of theft in the present case falls squarely within the category of defamation per se

because his statements were likely to injure the reputation of Schwartz merely as a member of the 709 Sports Club. As such, Schwartz was not required to prove actual damages, but instead was entitled to a presumption as to injury to his reputation. The jury, however, after concluding that DeVito made the slanderous statements, apparently also concluded that the resultant noneconomic damage to the plaintiff was negligible. Therefore, it awarded no general damages. Because Schwartz did not prove special damages, the jury properly did not award such damages. Finally, the jury, although possessing the discretion to award punitive damages after finding DeVito's conduct wilful, malicious and wanton, declined to do so.

Although the jury should have awarded Schwartz at least nominal damages, it set his damages at zero. Nonetheless, "as a general rule [an appellate court] will not reverse and grant a new trial for a mere failure to award nominal damages." *Riccio* v. *Abate*, 176 Conn. 415, 419, 407 A.2d 1005 (1979); see also *Kraisinger* v. *Liggett*, supra, 3 Kan. App. 2d 238. "While nominal damages are awarded without proof of actual injury, they imply the smallest appreciable quantity . . . with one dollar being the amount frequently awarded. The law, however, does not concern itself with trifles (de minimis non curat lex), and a judgment for plaintiff will not be reversed on appeal for a failure to award nominal damages, even though plaintiff is entitled to recover nominal damages as a matter of law." *Kraisinger* v. *Liggett*, supra, 238. Because the facts of this case do not warrant an exception to that rule, we conclude that the court correctly refused to set aside the jury's verdict even though it awarded Schwartz zero damages.

The judgment is affirmed.

In this opinion the other judges concurred.