DAPSCO, INC. *v.* REYNOLDS, EXECUTRIX, ETC., et al.

No. 43685 November 22, 1965 180 So. 2d 319

*Jones & Jones,* Waynesboro; *K. Hayes Callicutt, Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*Shannon Clark,* Waynesboro, for appellee.

Ethridge, P. J.

This suit was brought in the Circuit Court of Wayne County by F. W. Reynolds (now deceased), and Mrs. Myrtle Reynolds, his wife, against Dapsco, Inc. They sought damages to their timber, land, and livestock for

the negligent maintenance and repair of a dam around a slush pit or storage reservoir serving oil wells on their property. Dapsco appealed from a jury verdict of $2,815. Because of errors in instructions granted appellees, we reverse the judgment of the circuit court and remand for a new trial.

■■ ■ There were issues of fact as to (1) whether Dapsco was the operator or company maintaining and repairing the slush pit and dam; and if so, (2) whether Dapsco was negligent in maintaining and repairing it. Accordingly, the trial court erred in granting the following instruction:

> The Court instructs the jury for the plaintiffs that as a matter of law the persons or corporations or firms operating the oil wells and slush pits in question were guilty of negligence in the operation of the slush pit shown by the testimony to have broken and overflowed, and if you find from a preponderance of the evidence in this case that the oil wells and slush pit in question was operated by the defendant, Dapsco, Inc., then it will be your sworn duty to find for the plaintiffs in this case . . . .

This was a peremptory instruction to the effect that whoever was operating the slush pit was negligent.

L. H. Martin, vice president of Dapsco, admitted that its employee Harper told him the pit was getting full, he instructed him not to let it run over, to haul water out of it if necessary, or dig another pit. A trucking company removed some of the water. The dam broke after a big rain. Reynolds told Harper, about three weeks before the first break, that the pit was full. There were three breaks, on March 6 and December 4, 1963, and January 25, 1964. However, the slush pit was holding waste products from the wells without any trouble until the dam broke. After the first incident, Harper sent several men with shovels to repair it. The second break occurred in the same place, and again they repaired

it. After the third incident, a dragline was used. When C. F. Martin purchased the lease in 1961, the slush pit was already constructed. From a review of all of the evidence, we think it was a question of fact as to whether the slush pit was improperly operated, maintained, and repaired. It was error to give a peremptory instruction on negligence. In addition, Miller Transporters, Ltd. v. Espey, 253 Miss. 439, 176 So. 2d 249 (1965), condemned a peremptory for plaintiff "unless the court can properly designate the defendant or defendants who are liable to the plaintiff."

However, the circuit court was correct in submitting to the jury the issue of whether Dapsco in fact operated, maintained, and repaired the dam. Dapsco contends it was not the "operator" of the well and slush pit, but only the pumper. A pumper gauges the tanks, lubricates the pumping units daily, and if trouble occurs reports it to the "operator." On the other hand, appellant says, an "operator" is a person who is in charge of the development of the lease or operation of a producing well. The declaration charged that Dapsco owned or operated the three oil wells, maintained and repaired the slush pit, and had the duty to prevent the waste from escaping, but failed to do so.

The Reynolds leased this property in 1939, following which there were various interim assignments. Three oil wells produced on the 120 acres assigned in 1961 to C. F. Martin. L. H. Martin is a brother of C. F. Martin. Dapsco is owned by C. F. and L. H. Martin, who are, respectively, president and vice president of Dapsco and also of C. F. Martin, Inc. L. H. Martin claimed C. F. Martin, Inc. was operator of the wells, and Dapsco was only the contract pumper. Both Martins, C. F. Martin, Inc., and Dapsco have a common office in Laurel. L. H. Martin admitted that Dapsco repaired the slush pit, billed C. F. Martin, Inc. for the cost of its work and repairs. He directed Harper as an employee of

Dapsco to do the repairs. Dapsco was paid $100 per month for the pumping. There was no written agreement between C. F. Martin, Inc. and Dapsco. The latter used its trucks in working on the wells. Reynolds said that the repairs on the dam were done by employees of Dapsco who arrived in trucks with "Dapsco" printed on the sides.

These interrelationships between the two Martins and their two corporations, and their methods of operation, much of which was not in writing, plus Reynolds' testimony, made it a question for the jury as to whether in fact Dapsco performed the functions of an operator of the well, and whether it maintained and attempted to repair the slush pit. If it so found, there is sufficient evidence of negligence to make that also a jury issue. Jett Drilling Co. v. Jones, 251 Miss. 332, 169 So. 2d 463 (1964); Central Oil Co. v. Shows, 246 Miss. 300, 149 So. 2d 306 (1963); Ginther v. Long, 227 Miss. 885, 87 So. 2d 286 (1956); Gulf Ref. Co. v. Davis, 224 Miss. 464, 80 So. 2d 467 (1955).

 The circuit court erred in submitting to the jury punitive damages. Jett Drilling Co. v. Jones, *supra*. It also erred in refusing at least one of Dapsco's requested instructions placing the burden on the Reynolds to prove that Dapsco was negligent, and such negligence proximately contributed to their damages.

Since the case is being reversed for the foregoing errors, we do not consider whether the verdict was grossly excessive. However, Instructions No. 2 for plaintiffs and No. 2 for defendant, when read together, are substantially correct measurements of damages, except that plaintiffs' No. 2, submitting loss of timber as a special damage, should exclude it as a permanent damage, in order to avoid duplication of this item.

 There was no error in permitting Reynolds to testify about a recent settlement with Dapsco of another claim for damages on this same land. This was relevant

on the key issue made by defendant, as to whether Dapsco was operator of the wells and slush pit.

Reversed and remanded.

*Gillespie, Jones, Brady and Inzer, JJ.* concur.