GILLESPIE, Presiding Justice.
Lawrence Byrd and his wife, Iva Lee Byrd, plaintiffs below and appellees here, filed suit in the County Court of Jones County, Mississippi, against W. C. Richardson for damages sustained by plaintiffs when oil, salt water and other substances were allowed to escape from the site of an oil well and flow over land belonging to plaintiffs. The jury returned a verdict of $3,000 actual and punitive damages against W. C. Richardson. Richardson appealed to the circuit court where the judgment was *425 affirmed on condition that the plaintiff enter a $500 remittitur. The remittitur was entered and the judgment was affirmed by the circuit court in the amount of $2,500. Richardson appealed to this Court.
A review of the evidence, some of which was conflicting, justified the jury in finding the facts as next stated.
Plaintiffs owned certain land in the Pool Creek Oil Field in Jones County, Mississippi. Defendant Richardson drilled an oil well on land lying adjacent to and south of the land belonging to the plaintiffs. The well was started during the spring of 1965 and reached total depth on the fifth day of July of that year. Production casings were set and a workover rig was moved in to complete the well. The natural drainage flows from the well site in a northwesterly direction across two contiguous forty acre tracts of plaintiffs’ land. Sometime after or during the completion of defendant Richardson’s oil well, a bulldozer was used to cut the dam on the lower side of one of the slush pits which contained oil, salt water and other substances. The bulldozer then pushed the substances in the slush pit out through the cut in the dam and the contents ran over the land belonging to the plaintiffs, covering approximately fifteen acres. It killed the timber on fifteen acres and contaminated the water in a pond, which rendered nearly forty acres unusable as a pasture for a period of about one year or more or up until the filing of this suit in February, 1967. After the pit was cut and the substances released onto plaintiffs’ land, a ditch was cut around one of the slush pits so that oil and other substances continued to drain around the slush pit over the land of the plaintiffs.
The plaintiffs offered proof of the kind, number, size and value of trees which were killed on the fifteen acres covered by the substances from the oil well. The proof was sufficient to justify the jury in finding that the depreciation in the rental value of plaintiffs’ land up to the time of the filing of the suit amounted to $318.75 and that the damage to the timber amounted to $783. The greater part of the judgment is based upon punitive damages.
Appellant assigns as error the action of the trial court in giving plaintiffs an instruction allowing the jury to assess punitive damages. This assignment is based on the argument that (1) it was not proved that the operator of the bulldozer that cut the pit was employed by and acting for appellant, and (2) there was no proof of conduct on the part of the appellant or his employees that would authorize the assessment of punitive damages.
As stated in Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965), punitive damages may be recovered only in cases where the wrongful act complained of is characterized by some circumstance of aggravation, such as willfulness, wantonness, malice, gross negligence, recklessness, oppression, contumely, indignity, outrageous conduct, insult, or gross fraud.
Appellee Lawrence Byrd testified that he was working on his land when he saw a bulldozer operated by Kelly Brothers of Waynesboro cutting the slush pit dam at the Richardson oil well south of the Byrd property. Byrd testified that he went to his home in Laurel and got a camera, returned to his land, and took a number of photographs showing the bulldozer in various positions in and around the slush pit and the substances from the pit running onto the Byrd land. Twelve of these color photographs were introduced in evidence. Other photographs made later showed the deadened timber; and another made November 9, 1965, showed what appears to be oil running around the slush pit in the ditch constructed around the drill site. Byrd and other witnesses testified this oil continued to drain over the Byrd land from time to time up until the suit was filed. It appears, however, that all or most of the damage done to the timber on the plaintiffs’ land occurred when the pit was cut in the summer of 1965. Byrd’s testimony was corroborated by several other witnesses. Appellant *426 did not offer the bulldozer operator or any other person connected with Kelly Brothers, although the petroleum engineer in charge of appellant’s well testified that Kelly Brothers did work for appellant with a bulldozer, but no one instructed Kelly Brothers to cut the slush pit dam. It was the contention of appellant, and his petroleum engineer so testified, that the slush pit dam broke, and Kelly Brothers was employed to repair it. The jury was justified in rejecting the testimony in behalf of appellant. The weight of the evidence, substantiated by the photographs, supports plaintiffs’ contention that the contents of one of the slush pits (there were two) were intentionally released and ran over the plaintiffs’ land. Appellant introduced a forester who examined the dead timber nearly two years after the well was drilled by appellant. He testified he thought some of the timber had been dead longer than two years, that some had been killed by fire, but that salt water and silt killed part of the timber but he could not say how much died from other causes.
In our opinion, the proof in this case was sufficient to submit to the jury the issue of punitive damages.
Appellant next argues that the judgment is grossly excessive, and that the evidence on the question of damages was unsatisfactory. We are of the opinion that the testimony was sufficient to justify a finding by the jury that substantial damage was done to the Byrd land. The evidence as to the damages is sufficient to withstand the contention of appellant that the jury could not reach an intelligent verdict on the amount of compensatory damages.
The other questions raised do not require discussion. After a careful review of the record in this case, we are of the opinion that the evidence justified the jury in finding that those in charge of appellant’s oil well released salt water, oil and other substances over plaintiffs’ land either intentionally or in reckless disregard of the rights of adjoining landowners. The evidence shows that all or nearly all of the damage to the timber was done at one time in the summer of 1965, although a finding was justified that some oil continued to flow down the drains on plaintiffs’ land until February, 1967, when the suit was filed, and that some of this oil continuously contaminated plaintiffs’ pond.
Appellant contends the verdict is grossly excessive. The final judgment of the circuit court exceeds the amount of compensatory damages sustained by plaintiff, but we are unable to say the judgment is grossly excessive in view of the fact that the jury awarded punitive damages.
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.